RAMONA H. STAFFORD, as Administrator of the Estate of Stephen W. Stafford, and Individually, and STATE OF NORTH CAROLINA, ex. rel, Ramona H. Stafford, as Administrator of the Estate of Stephen W. Stafford, and Individually, Plaintiffs-Appellants v. RON BARKER, in his official capacity as Sheriff of Forsyth County, North Carolina, and HARTFORD FIRE INSURANCE COMPANY, Defendants-Appellees

No. COA97-426

(Filed 2 June 1998)

**1. Municipal Corporations § 450 (NCI4th); Sheriffs, Police, and Other Law Enforcement Officers § 20 (NCI4th)— prisoner erroneously released—wrongful death claim by murder victim's estate—public duty doctrine**

The trial court did not err by granting summary judgment for defendant-sheriff in a wrongful death claim by the estate of a murder victim where the murderer had been improperly released from the county detention center. The Court of Appeals declined to adopt § 319 of the *Restatement (Second) of Torts* as an exception to the public duty doctrine; not only would an adoption of § 319 be inconsistent with the public duty doctrine and its exceptions as set forth in *Braswell v. Braswell*, 330 N.C. 363, but it would also be wholly inconsistent with a line of other North Carolina cases.

**2. Municipal Corporations § 444 (NCI4th)— public duty doctrine—wrongful death action by estate of murder victim—purchase of liability insurance by sheriff**

Defendant-sheriff's purchase of liability insurance did not create a negligence cause of action based on waiver of governmental immunity because a waiver of governmental immunity does not create a cause of action where none previously existed. The public duty doctrine in this case precludes a finding that the sheriff owed any duty to the murder victim other than the duty generally owed him as a member of the public at large.

**3. Principal and Surety § 28 (NCI4th)— sheriff's bond—claim by murder victim's estate—no intentional misconduct**

The trial court properly granted summary judgment · on plaintiff's claim under N.C.G.S. § 58-76-5 where plaintiff was the administrator of the estate of a murder victim and the murderer had been improperly released from the county jail. N.C.G.S. § 58-76-5 gives plaintiff a right of action against the sheriff, but

**STAFFORD v. BARKER**

[129 N.C. App. 576 (1998)]

does not relieve her of the burden of proving that the sheriff either intentionally engaged in misconduct and misbehavior while performing his custodial duties or that he acted negligently in the performance of those duties. Plaintiff makes no allegation of intentional misbehavior and, under the public duty doctrine, cannot successfully assert that the Sheriff acted negligently in the performance of his duties.

Appeal by plaintiffs-appellants from order entered 13 January 1997 by Judge H. W. Zimmerman, Jr. in Forsyth County Superior Court. Heard in the Court of Appeals 6 January 1998.

*Smith, Follin & James, L.L.P., by Seth R. Cohen, for plaintiffs-appellants.*

*Womble Carlyle Sandrige & Rice, L.L.C. by Allan R. Gitter and Ursula M. Henninger, for defendants-appellees.*

WYNN, Judge.

In North Carolina, there are two exceptions to the "public duty doctrine": (1) when there is a special relationship between the injured party and the police and (2) when a municipality, through its police officers, creates a special duty by promising protection to an individual, yet fails to provide such protection to the individual promised. *Braswell v. Braswell,* 330 N.C. 363, 371, 410 S.E.2d 897, 902 (1991). Because plaintiff in this case does not allege that her wrongful death claim against the Sheriff of Forsyth County falls within either of these two recognized exceptions, and we are not persuaded by her argument to adopt an additional exception for situations involving a special relationship between the alleged wrongdoer and the police, we uphold the trial court's grant of summary judgment as to her wrongful death claim. Furthermore, because the public duty doctrine also bars plaintiff's claim under the sheriff's official bond, we also affirm the trial court's grant of summary judgment as to that claim.

Viewing the evidence in the light most favorable to the non-moving party, the record shows that on 13 April 1993, police officers arrested Robbie Lyons for numerous counts of injury to real property. Lyons was placed under a $10,000 secured bond in the Guilford County Detention Facility in High Point. Two days later, while still in jail, he was served with warrants charging robbery with a dangerous

weapon, larceny, and three counts of uttering forged checks. A $5,000 bond was set for these charges, but never posted.

The next day, 16 April 1993, Lyons was convicted in Guilford County District Court of nineteen (19) counts of injury to real property and one count of larceny. He was sentenced to an active term on seventeen (17) months and twenty-nine (29) days imprisonment for the injury to real property charges and a concurrent two (2) year sentence for the larceny charge. The trial judge further recommended that he undergo a mental examination.

Five days later, 21 April 1993, Lyons was transported from the High Point Detention Center to the Forsyth County Detention Center. Although the evidence at trial presented conflicting accounts concerning the paperwork given to the receiving officer, the evidence most favorable to plaintiff indicates that the officer received the Judgment and Commitment documents showing Lyons' active time. In any event, the evidence conclusively shows that on 17 May 1993, Lyons was improperly released from the Forsyth County Detention Center.

About five weeks later, on 24 June 1993, Lyons, under the alias of Robby James Johnson, was again placed in the Forsyth County Detention Center—this time for another armed robbery charge. The record shows that on the date of his second incarceration, a pre-screener interviewing inmates recognized that Robby Johnson was in fact Robby Lyons and reported her discovery to deputies at the Forsyth County Sheriff's Department. The record further reflects that over the next several weeks while incarcerated at the Forsyth County Detention Center, Lyons convincingly demonstrated violent propensities as a "problem inmate." Moreover, during this second incarceration, true bills of indictments were handed down against Lyons for armed robbery and other charges. Nonetheless, under a plea bargain for the charges leading to his second incarceration, Lyons pled guilty to common law robbery and received three (3) years probation. Apparently, despite the pre-screener's identification of Robby Johnson as Robby Lyons, the jail officials did not act on this information, thereby resulting in his second release on 10 August 1993.

However, Lyons' criminal pattern of conduct persisted such that on 18 September 1993, he, for the third time, entered the Forsyth County Detention Center—this time for failing to appear on a shop lifting charge and another misdemeanor. He posted a $50.00 cash bond and was released on 21 September 1993.

STAFFORD v. BARKER

[129 N.C. App. 576 (1998)]

Four days later, Lyons fatally shot Stephen W. Stafford while robbing a grocery store in Forsyth County. On 4 April 1996, the Supreme Court of North Carolina upheld his conviction for that crime (*State v. Lyons*, 343 N.C. 1, 468 S.E.2d 204 (1996)) and now Lyons awaits the execution of his death sentence in North Carolina Central Prison.

Mr. Stafford's wife, Ramona, acting as the Administratrix of his estate and in her individual capacity, sued the Sheriff of Forsyth County on his surety bond on 15 September 1995, alleging that her husband's death resulted from the negligent release of Lyons from the Forsyth County Detention Center. The sheriff answered and moved to dismiss Mrs. Stafford's complaint on the ground that the public duty doctrine barred her claim. Superior Court Judge William Z. Wood, Jr. denied that motion, however, on 5 December 1995.

Subsequent to the filing of the sheriff's answer, Mrs. Stafford amended her complaint as a matter of right to include a wrongful death claim that alleged that the sheriff negligently released Lyons from the Forsyth County Detention Center.

On 3 December 1996, the sheriff moved for summary judgment, contending that the public duty doctrine barred her claims. Thereafter, Superior Court Judge H. W. Zimmerman, Jr. granted summary judgment as to both claims. Mrs. Stafford now appeals to this Court.

## I.

### Wrongful Death Claim

[1] Mrs. Stafford first contends that the trial court erred in applying the public duty doctrine to bar her wrongful death claim because, she argues, a "special relationship" existed between the Sheriff of Forsyth County and Lyons as contemplated by Section 319 of the *Restatement (Second) of Torts*, which provides:

> One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.

Recognizing that Section 319 has not been adopted by our Supreme Court as an exception to the public duty doctrine, Mrs. Stafford urges this Court to formally adopt the reasoning set forth in Section 319 as a new "special relationship" exception to the public duty doctrine. For the reasons discussed below, we decline to do so.

STAFFORD v. BARKER

[129 N.C. App. 576 (1998)]

Under the common law rule known as the "public duty doctrine," a municipality and its agents are deemed to act for the benefit of the general public rather than specific individuals. *Braswell*, 330 N.C. at 370, 410 S.E.2d at 901. Thus, ordinarily, the municipality or its agents may not be held liable to specific individuals for the failure to furnish them with police protection. *Id.* There are, however, two exceptions to public duty immunity which have been recognized by the courts of this State: (1) where there is a special relationship between the injured party and the agent or agency; and (2) where the agent or agency creates a special duty by promising protection to an individual, the protection is not forthcoming, and the individual's reliance on the promise is causally related to the injury suffered. *Hedrick v. Rains*, 121 N.C. App. 466, 470, 466 S.E.2d 281, 284, *disc. review allowed*, 343 N.C. 51, 472 S.E.2d 8 (1996) (quoting *Sinning v. Clark*, 119 N.C. App. 515, 519, 459 S.E.2d 71, 74, *disc. review denied*, 342 N.C. 194, 463 S.E.2d 242 (1995)).

In the present case, Mrs. Stafford relies on this Court's recent decision in *Hedrick v. Rains, supra*, to support her argument that Section 319 of the Restatement should be adopted as a new exception to the public duty doctrine.

The plaintiffs in *Hedrick* alleged that the Sheriff of Columbus County unlawfully released an inmate from custody, enabling that inmate to come into contact and eventually murder two women. *Id.* at 466, 466 S.E.2d at 281. Relying on Section 319, the plaintiffs in *Hedrick* argued that a special relationship existed between the sheriff and the inmate which imposed a duty on the sheriff to control the inmate so as to prevent him from harming the two women. *Id.* at 468, 466 S.E.2d at 283. In addressing this argument, this Court concluded that because plaintiffs had failed to demonstrate that the sheriff knew or should have known of the inmate's propensity for violence, liability could not be imposed upon the sheriff under Section 319. *Id.* After discussing the inapplicability of Section 319, we went on to discuss the public duty doctrine and its two recognized exceptions. *Id.* Based upon those two exceptions, we held that plaintiffs' claim of negligence against the sheriff failed because "they [did not] allege any facts which, taken as true, would impose liability under either exception." *Id.* at 470, 466 S.E.2d at 284.

Although Mrs. Stafford concedes that this Court did not formally adopt Section 319 as an exception to the public duty doctrine in *Hedrick*, she does argue that this Court, in discussing the argument

STAFFORD v. BARKER

[129 N.C. App. 576 (1998)]

regarding the applicability of Section 319, "recognized" the special relationship envisioned by that section and that therefore, we should not be reluctant to now formally adopt that section as a new exception to the public duty doctrine. In response to this argument, defendants argue that any recognition this Court may have given to Section 319 was summarily rejected by our Supreme Court in its *per curiam* affirmance of our holding in *Hedrick. See* 344 N.C. 729, 477 S.E.2d 171 (1996). In that decision, the Supreme Court issued the following one paragraph opinion:

> The decision of the Court of Appeals is affirmed, but we note with disapproval the citation of the Restatement (Second) of Torts as authority. Except as specifically adopted in this jurisdiction, the Restatement should not be viewed as determinative of North Carolina law.

*Id.*

Unlike defendants, we do not read the Supreme Court's *per curiam* decision as a specific rejection of the "special relationship" envisioned in § 319 of the Restatement; rather, we believe the Supreme Court was merely cautioning this Court not to cite to the *Restatement (Second) of Torts* as authority without first holding that the subject section of the Restatement was being adopted as the law of this State. However, that understanding aside, we still decline to adopt Section 319 as a new exception to the public duty doctrine. In our opinion, to decide otherwise would only serve to circumvent the holdings of our courts both prior to and after our decision in *Hedrick*.

For example, in *Humphries v. N.C. Dept. of Correction*, 124 N.C. App. 545, 479 S.E.2d 27 (1996), *rev. granted*, 345 N.C. 342, 483 S.E.2d 168 (1997), *and rev. improv. granted*, 346 N.C. 269, 485 S.E.2d 293 (1997), a case decided after *Hedrick*, the plaintiff asserted an argument similar to that of Mrs. Stafford, yet we declined to carve out a new exception to the public duty doctrine. In *Humphries*, plaintiff alleged that a probation officer, as an agent of the Department of Corrections, breached his duty of care to plaintiff's decedents by allowing a probationer under house arrest to escape and kill the decedents. *Id.* at 546, 479 S.E.2d at 27. After a hearing before both the Deputy Commissioner of the Department of Corrections and subsequently the Full Commission of the North Carolina Industrial Commission, plaintiff prevailed and the probation officer was held liable for having breached his duty of care in the supervision of the

probationer. *Id.* at 546-47, 479 S.E.2d at 28. On appeal to this Court, however, we reversed that ruling, holding instead that the public duty doctrine barred plaintiff's claim because there was no evidence in the record that either of the recognized exceptions to the public duty doctrine applied. *Id.* For the reasons stated in *Hedrick*, we held that under the public duty doctrine, the probation officer and the Department of Corrections owed a duty to the general public at large, and not to plaintiff's decedents specifically. *Id.*

Similarly, in *Hull v. Oldham*, 104 N.C. App. 29, 407 S.E.2d 611, *disc. review denied*, 330 N.C. 441, 412 S.E.2d 72 (1991), and *Prevette v. Forsyth County*, 110 N.C. App. 754, 431 S.E.2d 216 (1993), two cases decided by this Court prior to *Hedrick*, we refused to create a new exception to the public duty doctrine based upon an alleged "special relationship" between the subject wrongdoer and law enforcement agents. In *Hull*, the plaintiffs sued the Sheriff of Forsyth County for violation of his sheriff's bond and for his negligence in failing to prevent a man named Michael Hayes from killing two people and injuring others. Plaintiffs alleged that Hayes' family sought information on how to involuntarily commit Hayes and that on at least one occasion, a deputy was present while Hayes was in the hospital, knew of Hayes' condition, yet failed to provide the necessary information as to commitment procedures. *Id.* at 33, 407 S.E.2d at 613. In asserting their argument that an exception to the public duty doctrine applied as to their claim of negligence, the plaintiffs argued, among other things, that a special relationship arose between the victims and the defendants "because a deputy had 'constructive control' of Hayes at the hospital." *Id.* at 36, 407 S.E.2d at 615. In rejecting this argument, this Court reemphasized the fact that defendants could not be held liable unless a "special relationship exist[ed] between the victim and law enforcement officials, such as where the victim is in police custody," or where law enforcement officials promise protection to a victim and their failure to give such protection ultimately results in the victim being injured. *Id.* After finding that plaintiffs' complaint failed to allege a promise of protection to the victims or that "there was any relationship between the victims and the defendants much less a special relationship," we held that defendants owed no special duty to the individual victims. *Id.*

In *Prevette*, plaintiffs brought an action against Forsyth County, its Animal Control Department and Shelter as well as several other named animal control agents, alleging that the defendants had failed to properly protect the decedent from two rottweiler dogs, even

though defendants had reason to know that the dogs were dangerous. 110 N.C. App. at 757, 431 S.E.2d at 218. In their attempt to bring the claim within one of the recognized exceptions to the public duty doctrine, plaintiffs argued that a "special relationship" existed between defendants and the decedent simply because the County's animal control agents had policed the neighborhood in which the decedent was attacked. *Id.* at 758, 431 S.E.2d at 218. Although defendants in that case had taken custody of the dogs after receiving several reports that the dogs were attacking individuals, we concluded that "such a broad application of the 'special relationship' exception . . . would not be consistent with our Supreme Court's holding in *Braswell.*" *Id.* at 758, 431 S.E.2d at 219.

The rationale set forth in *Prevette* applies equally here. Not only would an adoption by this Court of Section 319 be inconsistent with the public duty doctrine and its exceptions as set forth by our Supreme Court in *Braswell*, but it would also be wholly inconsistent with this Court's holdings in *Hedrick, Humphries, Hull* and a line of other North Carolina cases involving the applicability of the public duty doctrine. *See Sinning v. Clark, supra; Lynn v. Overlook Development*, 98 N.C. App. 75, 389 S.E.2d 609 (1990), *affirmed in part, reversed in part*, 328 N.C. 689, 403 S.E.2d 469 (1991); *Clark v. Red Bird Cab Co.*, 114 N.C. App. 400, 442 S.E.2d 75, *disc. review denied*, 336 N.C. 603, 447 S.E.2d 387 (1994); *Martin v. Mondie*, 94 N.C. App. 750, 381 S.E.2d 481 (1989); and *Davis v. Messer*, 119 N.C. App. 44, 457 S.E.2d 902 (1995). Accordingly, we decline to adopt Section 319 of the Restatement as an additional exception to the public duty doctrine.

[2] However, notwithstanding our refusal to create a third exception to the public duty doctrine, Mrs. Stafford argues that the public duty doctrine still should not be applied in this case because the sheriff purchased liability insurance. She argues that since a county may waive governmental immunity by purchasing liability insurance, *see* N.C. Gen. Stat. § 160A-485, it therefore follows that Sheriff Baker, upon the purchase of liability insurance, waived his immunity under the public duty doctrine. Again, we disagree.

While it is true, as Mrs. Stafford asserts, that a municipality in this State waives the defense of governmental immunity by purchasing liability insurance, it is also true that a waiver of governmental immunity does not create a cause of action where none previously existed. *Coleman v. Cooper*, 89 N.C. App. 188, 192, 366 S.E.2d 2, 5, *disc.*

*review denied*, 322 N.C. 834, 371 S.E.2d 275 (1988) (citing *Riddock v. State*, 68 Wash. 329, 123 P. 450 (1912); 57 Am. Jur.2d *Municipal, School, and State Tort Liability*, Sec. 72.) Accordingly, in *Coleman*, we applied the public duty doctrine to bar plaintiff's claims against the City of Raleigh and its police department for failing to protect her children from her estranged husband, despite the fact that the City had purchased liability insurance. Noting first that "[the] waiver of governmental immunity . . . [did] not create a cause of action where none previously existed," we held that the plaintiff had no cause of action against the city because there was no evidence that plaintiff's case fell within any of the two exceptions to the public duty doctrine. *Id.* at 192-95, 366 S.E.2d at 5-7.

Similarly, in this case, defendant's purchase of liability insurance cannot create for Mrs. Stafford a negligence cause of action where, as here, we have already concluded that the public duty doctrine precludes a finding that Sheriff Barker owed any duty to Mr. Stafford other than the duty generally owed him as a member of the public at large. Accordingly, because Mrs. Stafford in this case admits that neither of the two recognized exceptions to the public duty doctrine apply to the facts of this case, we hold that she has no basis in the law for holding Sheriff Barker liable for the wrongful death of her husband.

## II.

### Sheriff's Bond Claim

[3] Citing again to *Hull v. Oldham, supra*, Mrs. Stafford next contends that the trial court erred in granting summary judgment as to her claim under N.C. Gen. State § 58-76-5—the statute which provides a right of action on a sheriff's official bond. We disagree.

As we have already discussed, in *Hull*, we held that the public duty doctrine barred plaintiffs from asserting a negligence claim against the Sheriff of Forsyth County. 104 N.C. App. at 35-39, 407 S.E.2d at 614-17. However, in that case, plaintiffs also brought a claim under the sheriff's official bond against the Sheriff and his deputies, alleging that they had ignored repeated warnings by Michael Hayes' family and friends that Hayes was dangerous to himself and others. In considering that particular allegation, we held that it was sufficient to state a claim upon which relief could be granted because "under section 58-76-5 a cause of action [was] available to plaintiffs for the 'neglect, misconduct or misbehavior' of defendants *independent of*

*their negligence claims.*" *Id.* at 40, 407 S.E.2d at 617 (emphasis added).

Relying on the above holding, Mrs. Stafford contends that "although there may not be a common law duty to protect [individual] victims in [a] case, there nevertheless [is] a statutory duty pursuant to N.C.G.S. § 58-76-5." Therefore, she argues, the public duty doctrine is inapplicable in actions on a sheriff's bond. Such an argument, however, misapprehends our holding in *Hull*.

Contrary to Mrs. Stafford's assertion, we did not hold in that case that there was a "statutory duty" under N.C.G.S. § 58-76-5 which somehow attached to a municipality and its agents despite the immunity afforded them under the public duty doctrine. Rather, in *Hull*, we only affirmed the established principle that N.C.G.S. § 58-76-5 provides a plaintiff with a *statutory cause of action* in addition to a common law cause of action. *See also Williams v. Adams*, 288 N.C. 501, 219 S.E.2d 198 (1975); *Dunn v. Swanson*, 217 N.C. 279, 7 S.E.2d 63 (1940); *and Smith v. Phillips*, 117 N.C. App. 422, 429 S.E.2d 744 (1993). In other words, just as a plaintiff is required to prove every element of negligence in order to maintain a wrongful death claim, so too is he or she required to prove every element of a claim brought under N.C.G.S. § 58-76-5.

Accordingly, while N.C.G.S. § 58-76-5 gives Mrs. Stafford a right of action against Sheriff Barker, it does not relieve her of her burden of proving that the sheriff either intentionally engaged in misconduct and misbehavior while performing his custodial duties, or that he acted negligently in the performance of those duties, despite his duty to do otherwise. Because Mrs. Stafford makes no allegation that Sheriff Barker intentionally misbehaved in the performance of his duties, and we have already concluded that under the public duty doctrine, she cannot successfully assert that he acted negligently in the performance of his duties, we must hold that the trial court properly granted summary judgment on her claim under N.C.G.S. § 58-76-5.

In sum, the trial court's order granting summary judgment for defendants on Mrs. Stafford's wrongful death claim and her claim on the sheriff's bond is,

Affirmed.

Judges EAGLES and WALKER concur.